1
2
3
4
5
6
7

8        **UNITED STATES DISTRICT COURT**

9        **EASTERN DISTRICT OF CALIFORNIA**

10

11   ALICIA ANNA RANGEL,                    )   Case No.: 1:12-cv-01169 - JLT
                                            )
12            Plaintiff,                    )   ORDER REMANDING THE ACTION PURSUANT
                                            )   TO SENTENCE FOUR OF 42 U.S.C. § 405(g)
13       v.                                 )
                                            )   ORDER DIRECTING ENTRY OF JUDGMENT IN
14   CAROLYN W. COLVIN,                     )   FAVOR OF PLAINTIFF ALICIA RANGEL AND
     Acting Commissioner of Social Security,)   AGAINST DEFENDANT CAROLYN COLVIN,
15                                          )   ACTING COMMISSIONER OF SOCIAL
                                            )   SECURITY
16            Defendant.                    )
                                            )
17   _____

18         Alicia Anna Rangel ("Plaintiff") asserts she is entitled to disability insurance benefits and

19   supplemental security income under Titles II and XVI of the Social Security Act.  Plaintiff argues the

20   administrative law judge ("ALJ") erred in evaluating the evidence.  Therefore, Plaintiff seeks judicial

21   review of the administrative decision denying benefits.  For the reasons set forth below, the action is

22   **REMANDED** for further proceedings.

23                          **PROCEDURAL HISTORY**

24         Plaintiff filed applications for disability insurance benefits and supplemental security income,

25   which were denied by the Social Security Administration initially and upon reconsideration.  (Doc. 12-

26   3 at 15).  After requesting a hearing, Plaintiff testified before an administrative law judge ("ALJ") on

27   April 12, 2011.  *Id.* at 30.  The ALJ determined Plaintiff was not disabled under the Social Security

28   Act, and issued an order denying benefits on October 14, 2010.  *Id.* at 15-24.  The Appeals Council

                                               1

1    denied Plaintiff's request for review of the decision on May 22, 2012. *Id.* at 2-4. Therefore, the ALJ's

2    determination became the final decision of the Commissioner of Social Security ("Commissioner").

3                                    **STANDARD OF REVIEW**

4            District courts have a limited scope of judicial review for disability claims after a decision by

5    the Commissioner to deny benefits under the Social Security Act. When reviewing findings of fact,

6    such as whether a claimant was disabled, the Court must determine whether the Commissioner's

7    decision is supported by substantial evidence or is based on legal error. 42 U.S.C. § 405(g). The

8    ALJ's determination that the claimant is not disabled must be upheld by the Court if the proper legal

9    standards were applied and the findings are supported by substantial evidence. *See Sanchez v. Sec'y of*

10   *Health & Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

11           Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a

12   reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S.

13   389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197 (1938)). The record as a whole

14   must be considered, because "[t]he court must consider both evidence that supports and evidence that

15   detracts from the ALJ's conclusion." *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).

16                                   **DISABILITY BENEFITS**

17           To qualify for benefits under the Social Security Act, Plaintiff must establish she is unable to

18   engage in substantial gainful activity due to a medically determinable physical or mental impairment

19   that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C.

20   § 1382c(a)(3)(A). An individual shall be considered to have a disability only if:

21           physical or mental impairment or impairments are of such severity that he is not only
             unable to do his previous work, but cannot, considering his age, education, and work
22           experience, engage in any other kind of substantial gainful work which exists in the
             national economy, regardless of whether such work exists in the immediate area in
23           which he lives, or whether a specific job vacancy exists for him, or whether he would
             be hired if he applied for work.
24

25   42 U.S.C. § 1382c(a)(3)(B). The burden of proof is on a claimant to establish disability. *Terry v.*

26   *Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990). If a claimant establishes a prima facie case of disability,

27   the burden shifts to the Commissioner to prove the claimant is able to engage in other substantial

28   gainful employment. *Maounis v. Heckler*, 738 F.2d 1032, 1034 (9th Cir. 1984).

                                              2

**ADMINISTRATIVE DETERMINATION**

To achieve uniform decisions, the Commissioner established a sequential five-step process for evaluating a claimant's alleged disability.  20 C.F.R. §§ 404.1520, 416.920 (a)-(f).  The process requires the ALJ to determine whether Plaintiff (1) engaged in substantial gainful activity during the period of alleged disability, (2) had medically determinable severe impairments (3) that met or equaled one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1; and whether Plaintiff (4) had the residual functional capacity to perform to past relevant work or (5) the ability to perform other work existing in significant numbers at the state and national level.  *Id.*  The ALJ must consider testimonial and objective medical evidence.  20 C.F.R. §§ 404.1527, 416.927, 416.929.

**A.     Relevant Medical Opinions**

Dr. Deborah DiGiario conducted a comprehensive psychiatric evaluation on June 19, 2009.  (Doc. 12-9 at 101-05).  Plaintiff reported she had suffered depression "for many years" and "had a horrible childhood with being sexually molested by her father's friend . . . and witness[ing] domestic violence."  *Id.* at 101.  She told Dr. DiGiario that she "frequently ha[d] nightmares of the abuse several times a week."  *Id.*  Also, Plaintiff reported she "had a boyfriend who molested her own children."  *Id.*  Plaintiff told Dr. DiGiario she saw shadows and started hearing voices in April 2009 that said she was "not any good," after which Plaintiff was hospitalized for suicidal ideation.  *Id.* at 101-02.  Plaintiff reported "[s]he used meth in her 30s with alcohol . . . [and] has been sober nine years."  *Id.* at 102.

Dr. DiGiario found Plaintiff's concentration, persistence and pace were impaired.  (Doc. 12-9 at 103).  Plaintiff's thoughts were "focused and well-organized," but her thought content was "positive for auditory hallucinations with demeaning voices, ideas of reference, visual hallucinations, pessimism, hopelessness, [and] helplessness."  *Id.*  Dr. DiGiario diagnosed Plaintiff with major depression with psychotic features in partial remission, chronic post-traumatic stress disorder, and substance abuse in remission.  *Id.* at 104.  In addition, she noted Plaintiff had "chronic suicidal ideation."  *Id.*  She opined Plaintiff's prognosis was "guarded," and gave Plaintiff a GAF score of 60.[1]  *Id.*  Dr. DiGiario found

---

[1] GAF scores range from 1-100, and in calculating a GAF score, the doctor considers "psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness."  American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders*, 34 (4th ed.) ("DSM-IV).  A GAF score of 51-60 indicates

Plaintiff was "able to perform simple and repetitive tasks" but her "ability to interact with coworkers and the public is moderately impaired because of her anger." *Id.*

Dr. Emanuel Dozier conducted a comprehensive internal medicine evaluation on June 20, 2009. (Doc. 12-10 at 4).  Plaintiff reported pain in her back that was aggravated with bending, twisting, stooping, "standing more than 60 minutes, walking more than a mile, sitting more than 45 minutes, and lifting more than 5 pounds." *Id.*  In addition, Plaintiff told Dr. Dozier she had "chronic neck pain" that radiated into her head and caused headaches at least twice a week that were "associated with some photo and phonophobia, but no nausea or vomiting." *Id.*  She reported "numbness, tingling, and weakness of the right arm." *Id.*  She rated the pain in her neck and pack as an "8/10." *Id.*  Further, Plaintiff stated she had pain from carpal tunnel in her right wrist that she rated as "9/10." *Id.* at 5.  She denied drinking and illicit drug use.  *Id.*

Dr. Dozier observed Plaintiff walked with a normal gate and she was "able to sit during the interview without discomfort." (Doc. 12-10 at 5).  Plaintiff's grip strength was "5/5" and her motor strength in the upper and lower extremities was "5/5." *Id.*  Dr. Dozier found "presence of a positive Tinel's sign in both wrists" and "tenderness over the lumbosacral spine with paravertebral muscle spasm." *Id.* at 7.  Dr. Dozier opined Plaintiff would be limited to standing and walking six hours, and sitting for six hours. *Id.* at 7-8.  Further, Dr. Dozier determined Plaintiff was able to "lift and carry 20 pounds occasionally and 10 pounds frequently," and "[p]ostural restrictions would be on occasional bending, stooping, crouching, pushing, and pulling." *Id.* at 8.  Due to her pain and carpal tunnel, Plaintiff had manipulative restrictions "to occasional reaching, handling, fingering, and feeling." *Id.*

On July 1, 2009, Dr. Brady Dalton completed a psychiatric review technique form.  (Doc. 12-10 at 9).  He opined Plaintiff had severe mental impairments including an affective disorder, anxiety-related disorder, personality disorder, and substance addition disorder. *Id.*  Further, Dr. Dalton noted Plaintiff suffered from major depression; post-traumatic stress disorder; a personality disorder, not otherwise specified; and alcohol and methamphetamine dependence in reported remission. *Id.* at 12-17.  Dr. Dalton opined Plaintiff had "moderate" limitations in activities of daily living and maintaining

---

"moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflict with peers or co-workers)." *Id.* at 34.

social functioning, and "marked" difficulties in maintaining concentration, persistence or pace. *Id.* at 19. However, Dr. Dalton did not expect these impairments to last twelve months. *Id.* at 9, 21. He observed Plaintiff's mental health treatment records "suggest[] significant decreases in [her] depression and symptoms of PTSD and resolve of her psychosis with medication." *Id.* at 21. Dr. Dalton believed it was "likely that [Plaintiff's] depression will continue to improve/decrease with ongoing care." *Id.*

Dr. A. Khong completed a physical residual functional capacity assessment on July 17, 2009. (Doc. 12-10 at 23). Dr. Khong noted Plaintiff suffered from neck and lower back pain, as well as right carpel tunnel syndrome. *Id.* Dr. Khong found Plaintiff could lift and carry 20 pounds occasionally and 10 pounds frequently. *Id.* at 24. In addition, Plaintiff was able to stand and/or walk about six hours in an eight-hour day, and sit about six hours in an eight-hour day. *Id.* Dr. Khong opined Plaintiff was able to frequently climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. *Id.* at 25. She could occasionally climb ladders, ropes, and/or scaffolds. *Id.* Dr. Khong found Plaintiff did not have any manipulative, visual, communicative, or environmental limitations. *Id.* at 25-26. According to Dr. Khong, "There appears to be a psychogenic component to her physical symptoms which do not appear to be supported by the objective findgs (sic)." *Id.* at 31. Further, Dr. Khon explained that because Plaintiff presented "no evidence of compromised hand function, manips (sic) should be fully intact at light exertion." *Id.* Dr. John Bonner reviewed the medical record and affirmed Dr. Khong's assessment on March 3, 2010. (Doc. 12-11 at 48).

Plaintiff's treating physician, Dr. Alan Moelleken, completed a "Permanent and Stationary Report" on March 30, 2010. (Doc. 12-15 at 49-56). Dr. Moelleken noted Plaintiff suffered an injury at work on October 7, 2007, and "has had persistent symptoms since that time." *Id.* at 49. According to Dr. Moelleken, Plaintiff had MRIs that "demonstrate[d] facet arthropathy with mild degenerative disk disease" and "small disk protrusions C4-5 and C5-6 with disk bulging C6-7." *Id.* at 50. Plaintiff had "right hand weakness," which Dr. Moelleken attributed to carpal tunnel syndrome. *Id.* at 49-50. He declined to offer a functional capacity assessment. *Id.* at 52

On April 22, 2010, Dr. Michael Price performed "an impairment rating of bilateral shoulders and right wrist and hand symptoms/pathology" as requested by Dr. Moelleken. (Doc. 12-15 at 44-47). Specifically, Dr. Price examined Plaintiff's shoulders and right hand. *Id.* at 44. He found Plaintiff had

5

"decreased grip strength on the right compared to the left side with a 4/5 strength with right hand grip versus left hand grip clinically." *Id.*  Dr. Price determined Plaintiff had right and left shoulder subacromial bursitis, as well as impingement in the right shoulder. *Id.* at 45.

**B.    Plaintiff's Hearing Testimony**

Plaintiff testified at a hearing before the ALJ on April 12, 2011.  (Doc. 12-3 at 31).  She reported she had earned a GED, and completed a program to be a certified nursing assistant ("CNA"). *Id.* at 35.  Also, Plaintiff said she "went to the adult school for another training for medical assistant, but it was not a certified program." *Id.*

She reported she worked as an aide at Redwood Village, a residential home for the elderly, where her duties included "[h]ousekeeping, giving medication, taking vital signs and charting." (Doc. 12-3 at 37-38).  At a boarding care facility, Plaintiff answered phones, ordered medication, did some filing, and accompanied the residents on outings. *Id.*  Further, she worked as a rehabilitation assistant at Crestwood Behavioral Health. *Id.* at 38.  Plaintiff said that when she was a CNA, she would lift patients to bathe and dress them. *Id.* at 38-39.

According to Plaintiff, she suffered physical and mental health issues.  She explained she had "constant pain" in her lower and upper back, right shoulder that travelled down to her right wrist. (Doc. 12-3 at 40).  She stated that sitting too long caused an increase in the pain in her back, and she would "try to switch from one side to the other, or stand up, or just not sit too long." *Id.* at 40. Plaintiff said the pain in her neck increased when she moved her arm or hand too much. *Id.* at 40-41.  Use of her hands aggravated the pain in her right wrist where she had carpal tunnel. *Id.* at 41.  Plaintiff said she used a hand brace and had "some injections." *Id.*  She reported her pain medication, Hydrocodone, helped "[s]omewhat" with the pain. *Id.* at 42.

In addition, Plaintiff testified that she had "a problem with . . . hygiene." (Doc. 12-3 at 36). She stated: "I don't care too much to take care of myself." *Id.*  She reported she did not do household chores, and did not wash dishes or make her bed. *Id.*  She explained she would only use one blanket and slept on top of the bed so it did not have to be made, and she used paper plates. *Id.* Plaintiff said she did laundry about once every two weeks at her mother's place, and went grocery shopping "once a month." *Id.*

1    Plaintiff testified she did not like to leave her house because she was "paranoid" and knew

2    someone was going to kill her, but she did not know who.  (Doc. 12-3 at 36).  She stated that she spent

3    a typical day in bed asleep.  *Id.* at 36-37.  Plaintiff said she would turn on the television, but she was

4    "not paying attention to it" and "can't focus on TV."  *Id.* at 37, 44.  She testified she does not drive

5    because she "can't really concentrate very well" and "would not want to risk anybody's life."  *Id.* at 35.

6    Plaintiff reported she had used the bus system, but her daughter would drive her around town as

7    needed.  *Id.*

8    She estimated she could sit "anywhere from 15 to 30 minutes" before needing to stand, and

9    stand for "[a]bout 20 to 30, 35 minutes" before she needed to sit.  *Id.* at 42.  Further, Plaintiff believed

10   she could walk "less than half a mile" at one time.  *Id.*  She believed she was able to lift and carry a

11   gallon of milk with her left hand, but was limited to "probably half a gallon" with her right hand.  *Id.* at

12   42-43.  She asserted it was difficult to bend over, but she was able to do so while "holding onto a chair

13   or something."  *Id.* at 43.  Plaintiff said she sometimes had difficulty with holding small objects and

14   writing for a while.  *Id.*  Further, Plaintiff said she had difficulty raising her arms over her head.  *Id.*

15   Plaintiff reported she had previously attempted suicide, and that she had drug and alcohol abuse

16   issues in the past.  (Doc. 12-3 at 46).  She estimated she had been sober for about eight months.  *Id.*

17   **C.    The ALJ's Findings**

18   Pursuant to the five-step process, the ALJ determined Plaintiff did not engage in substantial

19   gainful activity after the alleged onset date of March 30, 2008.  (Doc. 12-3 at 17).  Second, the ALJ

20   found Plaintiff's severe impairments included: "cervical degenerative disc disease, lumbar degenerative

21   joint disease, right shoulder impingement with tendinitis, right carpal tunnel syndrome, obesity, and

22   major depression with psychotic features."  *Id.*  Next, the ALJ found Plaintiff did not have an

23   impairment or a combination of impairments that met or medically equaled a listing.  *Id.* at 17-19.  The

24   ALJ determined:

25   [T]he claimant has the residual functional capacity to lift and carry 20 pounds occasionally
     and 10 pounds frequently and sit, stand, and/or walk each for 6 hours in an 8-hour
26   workday. She can occasionally stoop, crouch, crawl, and climb. She can occasionally
     reach overhead bilaterally with her arms. She can occasionally forcefully grip and grasp
27   with her right arm. She can perform simple, routine tasks with occasional public contact.

28

7

1    (Doc. 12-3 at 19).  With this residual functional capacity, the ALJ found Plaintiff was unable to

2    perform any past relevant work, but was able to perform "jobs that exist in significant numbers in the

3    national economy."  *Id.* at 22-23.  Therefore, the ALJ concluded Plaintiff was not disabled as defined

4    by the Social Security Act.  *Id.* at 23.

5                          **<u>DISCUSSION AND ANALYSIS</u>**

6            Plaintiff asserts the ALJ erred in evaluating the credibility of her subjective complaints and

7    impermissibly rejected the opinion of Dr. Dozier.  (Doc. 14).  On the other hand, Defendant contends

8    the ALJ's decision "is supported by substantial evidence and in accord with the law."  (Doc. 15 at 11).

9    **A.      The ALJ's credibility determination**

10           In assessing credibility, an ALJ must determine first whether objective medical evidence shows

11   an underlying impairment "which could reasonably be expected to produce the pain or other symptoms

12   alleged."  *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*,

13   947 F.2d 341, 344 (9th Cir. 1991)).  Where the objective medical evidence shows an underlying

14   impairment, and there is no affirmative evidence of a claimant's malingering, an "adverse credibility

15   finding must be based on clear and convincing reasons."  *Id.* at 1036; *Carmickle v. Comm'r of Soc. Sec.*

16   *Admin.*, 533 F.3d 1155, 1160 (9th Cir. 2008).  Here, the ALJ determined Plaintiff was "not fully

17   credible.  (Doc. 1203 at 22).  Although Plaintiff's "medically-determinable impairments can reasonably

18   be expected to cause the alleged symptoms," the ALJ found Plaintiff's "statements about the intensity,

19   persistence, and limiting effects of [her] symptoms are not credible . . ."  *Id.* at 20.  Consequently, the

20   ALJ was required to set forth clear and convincing reasons for rejecting Plaintiff's testimony regarding

21   her pain.

22           Factors that may be considered by an ALJ include, but are not limited to: (1) the claimant's

23   reputation for truthfulness, (2) inconsistencies in testimony or between testimony and conduct; (3) the

24   claimant's daily activities, (4) an unexplained, or inadequately explained, failure to seek treatment or

25   follow a prescribed course of treatment and (5) testimony from physicians concerning the nature,

26   severity, and effect of the symptoms of which the claimant complains.  *Fair v. Bowen*, 885 F.2d 597,

27   603 (9th Cir. 1989); *see also Thomas v. Barnhart,* 278 F.3d 947, 958-59 (9th Cir. 2002) (the ALJ may

28   consider a claimant's reputation for truthfulness, inconsistencies between a claimant's testimony and

                                        8

her conduct, and a claimant's daily activities when weighing the claimant's credibility).  In this case, the ALJ considered Plaintiff's work history and history of substance abuse, stating:

> The claimant is not fully credible. The claimant has a poor work history prior the alleged onset date (Exhibit 5D) indicating there may be another reason for her unemployment other than medical disability. The claimant also has a history of substance abuse. She testified that she last used drugs eight months ago.

(Doc. 12-3 at 22).  Plaintiff contends these are not clear and convincing reasons to find her testimony is not credible.  (Doc. 14 at 16-20).

### 1.      Plaintiff's work history

The Ninth Circuit has determined that a poor work history is a relevant factor in a credibility determination.  In *Thomas*, the ALJ found the claimant "has shown little propensity to work in her lifetime" given her "extremely poor work history."  *Id.*, 278 F.3d at 959.  The Court observed the claimant's "work history was spotty, at best, with years of unemployment between jobs, even before she claimed disability in June of 1993."  *Id.*  Accordingly, the Court found her poor history was a "specific, clear and convincing reason[]" for discounting her pain testimony.  *Id.*

Defendant notes: "When Plaintiff applied for disability benefits, she listed the jobs she had held before she became unable to work due to her alleged disability in 2008, which included a two-year gap between spring 2002 and summer 2004 (AR 235).  Plaintiff's earnings report also reveals no earnings in 1989-1990, 1995-1996, 1998-1999, 2003, and negligible earnings in 1994, 1997, 2002 (AR 201)."  (Doc. 15 at 8).  Because Plaintiff had gaps between her jobs, like the claimant in *Thomas*, Defendant contends Plaintiff's work history is a proper consideration.  *Id.*

Notably, Plaintiff does not argue it was improper for the ALJ to consider her work history, but asserts the conclusion drawn by the ALJ is supported by an inadequate record.  According to Plaintiff, "The ALJ never inquired as to why [her] earnings were sporadic."  (Doc. 14 at 19).  She notes that she did not obtain her GED until 2002, had two daughters born in 1990 and 1991 and "a lack of earnings could be attributed to her raising her children or inability to obtain a job due to lack of education."  *Id.*  Indeed, the ALJ failed to offer findings regarding Plaintiff's work history beyond her opinion that it was poor.  *See, e.g., Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001) (as part of the credibility assessment, the ALJ considered the claimant's work history and his admission that he left his job for

reasons other than his alleged impairment); *Drouin v. Sullivan*, 966 F.2d 1255, 1259 (9th Cir. 1992) (finding the ALJ did not err in considering that, "according to [the claimant's] own testimony, she did not lose her past two jobs because of pain"). Though the Court has no criticism of the ALJ for considering Plaintiff's poor work history, the ALJ fails to explain why this factor necessarily demonstrates a lack in candor as to whether she suffers from a medical condition which precludes work. The ALJ needed to explain the conclusion in light of the evidence from medical professionals that she may suffer medical conditions which could impact her ability to work. The failure to do so requires the Court to find the ALJ failed to rely upon a clear and convincing reason for discounting Plaintiff's credibility.

2.      History of substance abuse

Plaintiff contends her history of substance abuse does not support the ALJ's credibility determination. (Doc. 14 at 18-19). There must be more than a history of substance abuse to discredit a claimant's testimony. *See Woodsum v. Astrue*, 711 F. Supp. 2d 1239, 1262 (W.D. Wash 2010) ("discounting plaintiff's credibility because of her substance abuse . . . history was improper, given that it bears little relevance to plaintiff's tendency to tell the truth"); *Johnson v. Barnhart*, 312 F. Supp. 2d 415, 429 (W.D.N.Y. 2003) (holding SSR 96-7p, 1996 SSR LEXIS 4 requires more than "history of alcoholism and drug abuse" to discredit the plaintiff's testimony). In light of the fact the ALJ did not find Plaintiff lacked candor regarding her substance abuse and cited no evidence indicating prior inconsistent statements,[2] Plaintiff's "history of substance abuse" is not a clear and convincing reason for rejecting her credibility.

3.      ALJ's failure to identify the testimony being discounted

Most importantly, as Plaintiff notes, an ALJ "must identify what testimony is not credible." (Doc. 14 at 18) (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)). "General findings," such

---

[2] Defendant asserts Plaintiff gave conflicting statements regarding her history of drugs and alcohol to Drs. DiGiario, Feldman, and Drozier. (Doc. 15 at 9). The Court notes this inconsistency as well. In addition, the Court has little doubt that the existence of a pervasive drug abuse problem may be considered, like a poor work history, in determining whether there are other explanations for the failure to work *if supported by an adequate record*. However, the Court is constrained to review *only* the reasoning asserted by the ALJ, and cannot consider *post hoc* arguments by Defendant or, even, the evidence upon which the ALJ *could have relied*. *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) ("It was error for the district court to affirm the ALJ's credibility decision based on evidence that the ALJ did not discuss.")

as the ALJ provided here, "are insufficient." *Berry v. Astrue*, 622 F.3d 1228, 1234 (9th Cir. 2010) (citations omitted).  The Ninth Circuit requires an ALJ to "**specifically identify what testimony is credible** and what evidence undermines the claimant's complaints." *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006) (emphasis added); *see also Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993) (an ALJ "**must state which pain testimony is not credible** and what evidence suggests the complaints are not credible"); *Parra v. Astrue*, 481 F.3d 742, 750 (9th Cir. 2007) ("The ALJ must provide 'clear and convincing' reasons to reject a claimant's subjective testimony, **by specifically identifying what testimony is not credible** and what evidence undermines the claimant's complaints").  Here, the ALJ did not carry this burden.  Although the ALJ found Plaintiff was "not fully credible," she failed to identify what testimony is not credible based upon her work history and history of substance abuse.

The ALJ's failure to specifically discuss and identify what portions of Plaintiff's testimony she found not credible constituted a failure to apply the correct legal standards in evaluating the credibility of Plaintiff's testimony.  As a result, the reasons for rejecting Plaintiff's credibility cannot be upheld by the Court.  *See Sanchez v. Sec'y of Health & Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987) (an ALJ's determination that the claimant is not disabled must be upheld by the Court if the proper legal standards were applied and the findings are supported by substantial evidence).

**B.     Remand is appropriate in this action**

The decision whether to remand a matter pursuant to sentence four of 42 U.S.C. § 405(g) or to order immediate payment of benefits is within the discretion of the District Court.  *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000).  Except in rare instances, when a court reverses an administrative agency determination, the proper course is to remand to the agency for additional investigation or explanation.  *Moisa v. Barnhart*, 367 F.3d 882, 886 (9th Cir. 2004) (citing *INS v. Ventura*, 537 U.S. 12, 16 (2002)).  Generally, an award of benefits is directed when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996).  In addition, an award of benefits is directed when no useful purpose would be served by further administrative proceedings, or where the record has

1  been fully developed.  *Varney v. Sec'y of Health & Human Serv.*, 859 F.2d 1396, 1399 (9th Cir. 1988).

2  The Ninth Circuit explained that "where the ALJ improperly rejects the claimant's testimony regarding

3  [her] limitations, and the claimant would be disabled if her testimony were credited," the testimony can

4  credited as true, and remand is not appropriate.  *Lester*, 81 F.3d at 834; *Smolen*, 80 F.3d at 1292.

5          However, courts retain flexibility in crediting testimony as true.  *Connett v. Barnhart*, 340 F.3d

6  871, 876 (9th Cir. 2003) (remanding for further determinations where there were insufficient findings

7  as to whether the plaintiff's testimony should be credited as true).  A remand for further proceedings

8  regarding the credibility of a claimant is an appropriate remedy.  *See, e.g., Bunnell*, 947 F.2d at 348

9  (affirming the district court's order remanding for further proceedings where the ALJ failed to explain

10  with sufficient specificity the basis for rejecting the claimant's testimony); *Byrnes v. Shalala*, 60 F.3d

11  639, 642 (9th Cir. 1995) (remanding the case "for further proceedings evaluating the credibility of [the

12  claimant's] subjective complaints . . .").  Based upon the record, remand is appropriate in this matter.

13                              **CONCLUSION AND ORDER**

14          The ALJ failed to set forth findings "sufficiently specific to allow a reviewing court to

15  conclude the ALJ rejected the claimant's testimony on permissible grounds."  *Moisa v. Barnhart*, 367

16  F.3d 882, 885 (9th Cir. 2004).  As a result, the administrative decision should not be upheld by the

17  Court.  *See Sanchez*, 812 F.2d at 510.  Because the Court finds remand is appropriate on this matter, it

18  declines to address the remaining issue raised by Plaintiff in her opening brief.

19          Accordingly, **IT IS HEREBY ORDERED**:

20      1.      Pursuant to sentence four of 42 U.S.C. § 405(g), this matter is **REMANDED** for further

21              proceedings consistent with this decision; and

22      2.      The Clerk of Court **IS DIRECTED** to enter judgment in favor of Plaintiff Alicia Rangel

23              and against Defendant Carolyn Colvin, Acting Commissioner of Social Security.

24

25  IT IS SO ORDERED.

26      Dated:   __July 9, 2013__                    _____/s/ Jennifer L. Thurston_____

27                                                  UNITED STATES MAGISTRATE JUDGE

28

                                        12

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28